UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO CORTEZ BUCKLEY,<br><br>Plaintiff,<br><br>v.<br><br>GREG MUNK, et al.,<br><br>Defendants. | Case No. 16-cv-07314-JD<br><br>**ORDER RE SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 38 |

This is a civil rights case brought pro se by a former pretrial detainee under 42 U.S.C. § 1983. His claims arise from his detention at Maguire Correctional Facility ("MCF"). Plaintiff, who is Orthodox Jewish, alleges that defendants interfered with his ability to practice his religion in violation of the Free Exercise Clause of the First Amendment. Specifically, he argues that defendants prevented him from having candles and a copy of a particular prayer book, which interfered with his observance of sabbath services, and defendants prevented him from wearing a tallit katan outside of his cell. He also argues that defendants denied him adequate medical care in violation of the Fourteenth Amendment by denying him protein shakes. Plaintiff has failed to file an opposition despite being given an extension of time and a notification of his non-opposition. The Court has still looked to the merits of his claims and grants the motion.

**MOTION FOR SUMMARY JUDGMENT**

**Legal Standards**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is

genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

To establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion without a justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008). A prisoner is not required to objectively show that a central tenet of his faith is burdened by a prison regulation to raise a viable claim under the Free Exercise Clause. *Id.* at 884-85. Rather, the test of whether the prisoner's belief is "sincerely held" and "rooted in religious belief" determines the Free Exercise Clause inquiry. *Id.* (finding district court impermissibly focused on whether consuming halal meat is required of Muslims as a central tenet of Islam, rather than on whether plaintiff sincerely believed eating kosher meat is consistent with his faith). The prisoner must show that the religious practice at issue satisfies two criteria: (1) the proffered belief must be sincerely held, and (2) the claim must be rooted in religious belief, not in purely secular philosophical concerns. *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (cited with approval in *Shakur*, 514 F.3d at 884).

A prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *Walker v. Beard*, 789 F.3d 1125, 1135 (9th Cir. 2015). Security interests may require prisons to restrict attendance at religious services, but the inmates must be provided with an alternative means of meeting the need for those services. *McCabe v. Arave*, 827 F.2d 634, 637 (9th Cir. 1987).

A claim for a violation of a pretrial detainee's right to adequate medical care arises under the Fourteenth Amendment rather than the Eighth Amendment. *Gordon v. County of Orange*, 888 F.3d 1118, 1122 & n.4 (9th Cir. 2018). The claim is evaluated under an objective deliberate indifference standard.

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id*. at 13. For the third element, the defendant's conduct must be objectively unreasonable -- "a test that will necessarily turn[] on the facts and circumstances of each particular care." *Id*. (citations and internal quotation marks omitted). The four-part test articulated in *Gordon* requires the plaintiff to prove more than negligence, but less than subjective intent. *Id*.

**Facts**

The salient facts are largely undisputed. Plaintiff was an Orthodox Jewish detainee at MCF. Amended Complaint ("Am. Comp.") Docket No. 28 at 6-7. On September 25, 2015, he filed a grievance stating that he had not received two candles and a prayer book that his girlfriend had brought to MCF for him. Motion for Summary Judgment ("MSJ"), Robbins Decl., Ex. A. The grievance did not reference being denied the right to observe sabbath services. *Id*. Plaintiff's girlfriend had brought other items but not the ones plaintiff inquired about. Robbins Decl. ¶ 5. Defendant Robbins contacted plaintiff's girlfriend, and she brought the prayer book on September 29, 2015. *Id*. ¶ 6. Robbins told plaintiff that the prayer book would be evaluated by staff for suitability but that the candles could not be accepted because they posed a fire hazard. *Id*. ¶¶ 5-8. Generally, inmates are not allowed to receive personal copies of books because they can be used to smuggle contraband into the facility. *Id*. ¶ 9. For example, paper is often soaked in methamphetamine for inmates to obtain drugs. *Id*. Inmates may possess books, including religious texts, as long as the books are sent directly from the seller. *Id*. Inmates may also request religious books and materials from the Service League of San Mateo County. *Id*.

On October 14, 2015, plaintiff filed a request to wear his tallit katan, a large shawl-like

3

garment, outside of his cell in common areas. MSJ at 10; MSJ, Bonifacio Decl., Ex. A. Defendant Bonifacio denied the request because wearing the tallit katan in common areas would obscure the appearance of plaintiff's orange jumpsuit and interfere with rapid inmate identification. *Id*. The jail does not allow inmates to wear items in common areas if the items could obscure the orange jumpsuits that inmates wear. Robbins Decl. ¶¶ 12-16. Obscuring the orange jumpsuit is a threat to facility security and could aid in an inmate's escape. *Id*. Many visitors and volunteers enter the facility each day and guards rely on the orange jumpsuits to identify inmates. *Id*. Plaintiff was permitted to wear the tallit katan in his cell. *Id*. ¶ 13. He could wear a kippa, or yarmulke, outside of his cell because a kippa is a small brimless cap that cannot cover the orange jumpsuit. *Id*. Plaintiff continued to file grievances about the restriction on wearing the tallit katan in common areas. Am. Comp. at 15, 16, 19, 51, 68.

The facility provides many accommodations for inmates' religious beliefs. MSJ, Robbins Decl. ¶¶ 17-23. Jewish inmates are provided kosher meals and are permitted to pray individually and in groups; they can wear a kippa in all parts of the facility; wear other religious garments when inside their cells; and keep religious items and texts in their cells. *Id*. at ¶¶ 13, 17-23. The facility also makes accommodations for Jewish inmates who want to participate in candle-lighting ceremonies. *Id*. at ¶ 22. For example, there is an electric menorah available for Hanukkah and in the past a rabbi has visited and lights candles on the visitor side of the glass partition, so inmates may observe candle lighting. *Id*.

On October 14 and October 25, 2015, plaintiff filed grievances requesting a protein shake to supplement his meals. MSJ, Chu Decl., Exs. B-C. Defendant Chu, the MCF dietician who responded to plaintiff's requests, evaluated plaintiff's height, weight, age and medical history to calculate his body mass index and his nutritional needs. Chu Decl. ¶ 9. She relied on body mass index reference charts from the American Dietetic Association and used the Harris Benedict Equation, which is the standard formula used by dieticians to determine daily caloric needs. *Id*. ¶¶ 9-10. Chu determined that plaintiff's body mass index was between normal and overweight and that he required 2096 calories a day to maintain his weight. *Id*. Chu concluded that plaintiff was receiving more than sufficient calories to meet his nutritional needs and that a supplemental

4

protein drink was not required to meet his nutritional needs. *Id.* ¶ 11. Protein supplement drinks are only provided for MCF inmates who are unable to maintain a healthy weight through their meals alone. *Id.* ¶ 8.

**DISCUSSION**

**Free Exercise**

For purposes of this motion, the Court accepts that plaintiff's beliefs are sincerely held and rooted in sincere religious conviction. Nevertheless, defendants are entitled to summary judgment for all of plaintiff claims. With respect to the denial of candles, the Ninth Circuit held that the restriction on candles at a correctional facility was reasonably related to a legitimate penological interest. *Ward v. Walsh*, 1 F.3d 873, 879 (9th Cir. 1993). Plaintiff has failed to show that the facts of this case are distinguishable from *Ward*.

Defendants also argue that the restrictions on personal books and of wearing a tallit katan outside of cells are reasonably related to legitimate penological interests and do not violate the First Amendment. Defendants have addressed the *Turner* factors, but plaintiff has failed to respond the defendants' arguments. The Court has reviewed defendants' motion for summary judgment and the record in this case, and finds that the restrictions at MCF are reasonably related to legitimate penological interests. The facility has a legitimate interest in preventing the smuggling of contraband through books. MCF provided detainees reasonable alternative means of acquiring books, either directly from the publisher or, for religious texts, through a county organization. Similarly, MCF has a legitimate interest in preventing inmates from wearing large garments that obscure their orange jumpsuits when they are outside of their cells. Staff must be able to see the orange jumpsuit to quickly identify and determine who is an inmate and who is not.

Plaintiff had many ways to alternatively practice his religion. He could obtain religious texts; a rabbi could bring candles to the visiting area; he could keep religious items in his cell; he could pray individually and in a group; he could wear a kippa at all times' and he could wear a tallit katan in his cell. Summary judgment is granted for the First Amendment religious claims.[1]

---

[1] To the extent plaintiff exhausted a claim for being denied his right to practice sabbath services due to the lack of candles and a prayer book, the claim is denied. Plaintiff had alternative means

5

**Medical Care**

Defendant Chu is entitled to summary judgment with respect to plaintiff's medical care claim. It is undisputed that plaintiff's requests for a protein shake were reviewed by a dietician. Chu evaluated plaintiff's requests and found that plaintiff was receiving enough calories for his medical needs and that his body mass index was between normal and overweight. A protein shake is only required for inmates who are unable to maintain a healthy body weight, and this was not an issue for plaintiff. Chu has presented evidence that demonstrates there is no genuine dispute as to any material fact, and she is entitled to judgment as a matter of law. Plaintiff was not put at risk of suffering serious harm by being denied protein shakes, and he suffered no injuries as a result of the denial. Defendant took reasonable steps to determine that plaintiff's requests were properly reviewed.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id*. at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

---

to practice sabbath services, and he has presented no arguments to the contrary.

6

The Court has not found a constitutional violation, and, even if there was one, defendants would be entitled to qualified immunity. It would not be clear to reasonable officials that restrictions on certain items would violate the law, especially because plaintiff was provided many alternative means to practice his religion. Nor would it be clear that denying plaintiff protein shakes when he was receiving enough calories through his normal meals would violate the law. Defendants are entitled to qualified immunity.

## CONCLUSION

1. For the reasons set forth above, the motion for summary judgment (Docket No. 38) is **GRANTED**.

2. The clerk is requested to close the file.

**IT IS SO ORDERED.**

Dated: November 2, 2018

JAMES DONATO
United States District Judge

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO CORTEZ BUCKLEY,<br>　　　　Plaintiff,<br>　　v.<br>GREG MUNK, et al.,<br>　　　　Defendants. | Case No. 16-cv-07314-JD<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 2, 2018, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Antonio Cortez Buckley
855 Jefferson Ave.
P.O. Box 2581
Redwood City, CA 94063

Dated: November 2, 2018

　　　　　　　　　　　　　　　　　　Susan Y. Soong
　　　　　　　　　　　　　　　　　　Clerk, United States District Court

　　　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　LISA R. CLARK, Deputy Clerk to the
　　　　　　　　　　　　　　　　　　Honorable JAMES DONATO